# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| TIMOTHY GLIBOWSKI, CHRISTINE DELMATER, STEPHANIE SPEICHER, JEFF SHELTON, DAVID DRAKE, CAROL S. ADAMS, AND TRAVIS HAMITER, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br> -against-<br><br><br>SCANA CORPORATION, SOUTH CAROLINA ELECTRIC & GAS COMPANY, SCANA SERVICES, INC., SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, KEVIN MARSH, JIMMY ADDISON, STEPHEN BYRNE, MARTIN PHALEN, MARK CANNON, RUSSELL HARRIS, RONALD T. LINDSAY, JAMES MICALI, MARION CHERRY, MICHAEL CROSBY, AND LONNIE CARTER,<br><br>       Defendants. | Civ. No. 9:18-273-TLW |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO JAMES MICALI'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

Plaintiffs Timothy Glibowski, Christine Delmater, Stephanie Speicher, Jeff Shelton, David Drake, Carol S. Adams, and Travis Hamiter, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this Memorandum in Opposition to the Motion to Dismiss the Third Amended Complaint ("Motion") by Defendant James Micali ("Micali").

As an initial matter, it is unclear whether Defendant Micali is moving to dismiss the complaint in its entirety or only the claims asserted against him. While his motion states that he "moves the Court for an order dismissing all claims asserted against him in the Third Amended Complaint,"[1] he also "requests that the Court dismiss the Complaint in its entirety." His memorandum of law concludes by requesting only that "the Court should dismiss both civil RICO counts against Mr. Micali with prejudice."[2] However, not all Plaintiffs are asserting claims against Defendant Micali. Plaintiff Hamiter and the putative Class of Santee Cooper Customers are asserting claims in the Third Amended Class Action Complaint against Defendant Micali, *i.e.,* claims that were not released in *Lightsey, et al. v. South Carolina Electric & Gas, et al.*, Court of Common Pleas, Case No.: 2017-CP-25-335. *See* Amend. Compl., ¶ 40, n. 5. Accordingly, Defendant Micali does not have standing to seek dismissal of the complaint in its entirety and this memorandum will be limited accordingly. If this Court disagrees, Plaintiffs rely on the arguments from the Plaintiffs' memorandum in opposition to SCANA's motion to dismiss and respectfully incorporates those arguments by reference herein. *See* n. 4, *infra*.

The Motion misapprehends the basis for Micali's liability in this case. Micali is liable for

---

[1] See Defendant James Micali's Motion To Dismiss The Third Amended [Sic] Complaint (August 20, 2019)(Doc. No. 108).
[2] See Memorandum in Support of Defendant James Micali's Motion To Dismiss The Third Amended [Sic] Complaint (August 20, 2019)(Doc. No. 108-1) at 12.

violations of the civil RICO statute primarily based upon his status as a member of the RICO Enterprise, and his joint and several liability for the violations of law committed by that Enterprise. Micali's sale of stock immediately following the disapproving conclusions of the Bechtel Report is not a predicate act but does indicate his membership in the Enterprise and provides evidence of scienter. Contrary to Micali's characterizations of the operative Complaint,[3] Plaintiffs have pled numerous predicate acts—use of the interstate wires and mails to misrepresent and conceal material facts about the Reactor Project from regulators and the public—with specificity and citations to publicly available information. *See, e.g.*, Amend. Compl. ¶¶ 66–254. This is more than enough to satisfy Federal Rule of Civil Procedure 9(b). Moreover, Plaintiffs have pled predicate acts of obstruction of justice, violations of the Travel Act, and use of the wires and mails to receive payments and send electricity bills that may not have contained fraudulent statements but were used in furtherance of an overall fraudulent scheme. These predicate acts need not satisfy Rule 9(b) (although they do here). At best, Micali's creates questions of fact regarding his liability under the Third Amended Complaint. For this reason, Plaintiffs respectfully request that the motion be denied.

## BACKGROUND

As detailed in the Complaint, this class-action lawsuit concerns allegations that Defendants—the two largest electric utilities in South Carolina—imposed billions of dollars of unnecessary and wasteful charges for the failed construction of two nuclear reactors at the V.C. Summer nuclear site, through means that violated the civil provisions of the Racketeer Influenced

---

[3] Except as noted, this brief refers to the current amended complaint, which has been amended three times, as the Complaint. Third Amended Class Action Complaint (July 30, 2019) (Doc. 103) ("Amend. Compl.").

and Corrupt Organizations statute (18 U.S.C. § 1962(c)).

In painstaking detail, through a nearly 90-page complaint replete with factual assertions and over 100 citations to documents in the public record, Plaintiffs' Third Amended Complaint lays out how Defendants accomplished this task. Briefly, Plaintiffs allege Defendants' created the largest commercial catastrophe in South Carolina history through three main phases of unlawful activity. First, Defendants induced the South Carolina Public Service Commission to permit Defendants to begin charging electrical utility customers for the cost of capital for two new reactors at the V.C. Summer nuclear site, by misrepresenting the necessity, feasibility, and cost of the project before the Public Service Commission and in statements to the public, and failing to correct misrepresentations that were made. Defendants secured approval of the project's base load application under the Base Load Review Act through material misstatements and omissions specifically described in the Complaint and accompanied by citations to the public record. *See* Amend. Compl. ¶¶ 66–78.

Second, Defendants, through material omissions and misrepresentations, concealed mounting problems in the planning, design, and construction of the project, many of which were foreseeable from the outset. Defendants provided false assurances to the SCPSC and the public that matters were proceeding according to plan, and never attempted to correct the material misstatements and omissions that permitted the project to proceed in the first place. In so doing, Defendants were able to secure SCPSC and Santee Cooper Board approval for repeated rate increases that imposed billions of dollars in additional, unnecessary charges on the people of South Carolina. The Complaint specifically describes these misstatements and omissions that proximately caused economic harm to members of the putative class, with an array of citations to documents in the public record. *See, e.g.*, Amend. Compl. ¶¶ 66–80, 82–84, 96, 102–105, 106,

109, 117–119, 125, 127, 145, 148, 151, 152, 158–160, 175, 178, 181, 205–208, 211, 215, 217, 245–246, 255, 262.

Third, Defendants wrongly failed to disclose critical, pessimistic internal assessments of the progress and feasibility of the project, and instead falsely represented to regulators and the public that all was well for the sake of continued rate increases to cover cost overruns. These assessments, too, are specifically identified in the operative Complaint, with citations to statements that appear in the public record. *See, e.g.*, Amend. Compl. ¶¶ 85, 98–101, 115, 120–124, 126, 128, 130–132, 135, 136, 140–142, 145, 153, 155, 163–168, 177, 184–187, 188–191, 202, 209, 210, 212–214, 219–222, 223–228, 231, 255, 262. For example, Defendants, in order to fraudulently maintain their ability to collect fraudulently inflated charges, actively concealed the damning findings of the Bechtel Report and Bechtel Schedule Assessment Report, assessments they commissioned of the Project's progress and obstacles to its completion. *See* Amend. Compl. ¶¶ 155, 163–168, 177, 184–187, 196–197, 219–220.

Plaintiffs have alleged Defendants accomplished this scheme through two different types of mail and wire fraud—predicate acts that RICO proscribes. Plaintiffs have also alleged Defendants committed mail and wire fraud by submitting communications to the SCPSC and the public through use of the interstate mails and wires that contained knowing misrepresentations of fact. *See* Amend. Compl. ¶¶ 288–300. Plaintiffs identify the communications at issue and provide citations to the public record for the majority of them. *See* Amend. Compl. ¶¶ 66–80, 82–84, 96, 102–105, 106, 109, 117–119, 125, 127, 145, 148, 151, 152, 158–160, 175, 178, 181, 205–208, 211, 215, 217, 245–246, 255, 262.

Defendants also utilized the interstate wires and mails to send electricity bills and receive payments based on rates that were inflated through fraudulent means, and to effectuate the

concealment of material information. *See, e.g.*, Amend. Compl. ¶¶ 282, 292. This type of mail and wire fraud predicate acts need not contain fraudulent representations, and thus need not be pled to a Rule 9(b) standard, as further explained below.

Throughout the relevant time period, Micali was a member of the board of directors of SCANA, which, along with the other RICO Defendants, presided over a massive business undertaking to construct the nuclear reactors. During his testimony in the 2008 PSC Proceeding, Defendant Marsh addressed how the Owners would collectively manage significant risks related to cost overruns and delays on the project which included naming SCANA's board of directors as part of a 50-person team assigned to this task. *See* Amend. Compl. ¶ 69. As part of the oversight group, SCANA's board of directors, including Micali, were provided with information related to delays that was never conveyed to the PSC, regulators or the public. *Id.* at ¶ 120. Further, within days of the release of the Bechtel Report—which concluded the Project was on a collision course with failure—Micali sold a significant number of shares. *Id*. at ¶ 195. As Plaintiffs plead, Micali is jointly and severally liable for the acts of the RICO Enterprise, and knowledge of the other members of the Enterprise may be imputed to him.

## **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, not the likelihood a plaintiff will ultimately succeed on the merits. *Butler v. Ford Motor Co*., 724 F. Supp. 2d 575, 578 (D.S.C. 2010) (Wooten, C.J.). The Fourth Circuit has held that a complaint should not be dismissed under Rule 12(b)(6) "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017), *cert. denied*,

138 S. Ct. 738 (2018) (emphasis added) (citation omitted). As this Court has held, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Butler,* 724 F. Supp. 2d at 578 (Wooten, C.J.). A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Ganaway v. Kyoto Highway 7 Inc.*, No. 2:11- CV-2959-RMG, 2012 WL 1354465, at *1 (D.S.C. Apr. 18, 2012) (emphasis added) (*quoting Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). At the motion to dismiss stage, "a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

The Federal Rules of Civil Procedure provide that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Allegations should be "simple, concise, and direct," and "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)–(e). To survive a motion to dismiss, a pleading should be facially plausible, meaning it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jones v. Ram Med., Inc.*, 807 F. Supp. 2d 501, 506–07 (D.S.C. 2011) (citation omitted) (Wooten, C.J.). Evaluating whether a complaint has met this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 507 (citation omitted). While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id*. at 166 (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

7

"[C]ourt[s] should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *United States v. Carolina Wrecking, Inc.*, No. CV 2:17-0276-RMG, 2019 WL 1777964, at *2 (D.S.C. Apr. 23, 2019), quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999). When ruling on a motion to dismiss under Rule 9(b), "'the court must read the complaint generously, and draw all inferences in favor of the pleader.'" *Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co.*, 808 F. Supp. 213, 228 (S.D.N.Y. 1992), quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989).

Rule 9(b) is generally satisfied when the complaint "state[s] the 'time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud,'" and the identity of the party making the representation. *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). But the Rule does not require such allegations: "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

Rule 9(b) is also satisfied when the fraudulent misrepresentations are contained in specifically identified documents that are alleged to reflect the collective contributions of defendant corporate officers and directors, even if the precise contributions of each officer or director to the document is not delineated (which would be impossible in many cases before discovery). *See, e.g.*, *Somerville v. Major Expl., Inc.*, 576 F. Supp. 902, 911 (S.D.N.Y. 1983). Where plaintiffs "identify the corporate defendants without associating specific misstatements

8

with individual officers and/or directors, such pleadings do not violate the pleading requirements of Rule 9(b) . . . ." *Id.*

The requirements of Rule 9(b) are relaxed in complex cases that involve lengthy time periods and "involv[e] thousands of billing documents." *Waterbury Hosp. v. U.S. Foodservice, Inc.*, 2009 U.S. Dist. LEXIS 117403, at *18 (D. Conn. Dec. 15, 2009). The precise date and circumstances of the alleged mailings under such circumstances need not be pled, so long as the plaintiffs "put the defendants on notice of the circumstances of the alleged fraud." *Id.* at *62.

One federal court has gone so far as to hold that Rule 9(b)'s particularity requirement does not apply to the pleading of mail or wire fraud predicate acts "where the mailings or wire transmissions themselves are not false or misleading." *Jerome Sobel & Co. v. Fleck*, No. 03 Civ. 1041, 2003 U.S. Dist. LEXIS 21362, at *15 (S.D.N.Y. Dec. 1, 2003) (citing *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998)). As the court further noted, "a description of a mailing in furtherance of a scheme to defraud but which is not itself fraudulent does not qualify as an 'averment of fraud' within the meaning of Rule 9(b)," and that its findings were "consistent with the notice pleading philosophy enunciated in Fed. R. Civ. P. 8(a) and a plaintiff's obvious need for discovery when knowledge of the mailings is in the defendant's exclusive possession." *Id.* at *17.

The pleading requirements of Rule 9(b) do not apply to the other elements of RICO claims or predicate offenses that do not sound in fraud. *See, e.g.*, *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989). For example, Rule 9(b) "does not govern allegations of . . . extortion, and RICO conspiracy, which are subject only to the more liberal notice-pleading requirements of Rule 8." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014).

# ARGUMENT[4]

## I. The Operative Complaint Contains Well-Pleaded Allegations for Civil RICO Liability Against Micali.

As discussed, the heart of the inquiry as to whether a complaint has satisfied Rule 9(b) is whether "(1) . . . the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999). This standard is easily satisfied here. Micali—a member of the Board of Directors of SCANA during the life of the Project—is one of the RICO Defendants identified in the Third Amended Complaint. Amend. Compl. ¶ 31. The Complaint contains a host of allegations that "the RICO Defendants" made numerous material misrepresentations and omissions through the use of the interstate mails and wires in communications to the SCPSC and the public, to secure the initial authorization for the Project and subsequent rate increases. *See, e.g.*, Amend. Compl. ¶¶ 68, 70, 71.

Many of these representations are contained in documents created through the collective collaboration of all defendants, and have been specifically cited to, with hyperlinks provided. The Complaint also alleges that the RICO defendants failed to disclose assessments of the Project that

---

[4] Plaintiffs adopt by reference all arguments made in their six other memoranda in opposition to Defendants' motions to dismiss: (1) Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss by Defendants SCANA Corporation and South Carolina Electric & Gas, (2) Plaintiffs' Response In Opposition To Defendant Ronald T. Lindsay's Motion To Dismiss, (3) Plaintiffs' Memorandum Of Law In Opposition To The Motion To Dismiss Plaintiffs' Third Amended Class Action Complaint By Defendant Kevin Marsh, (4) Plaintiffs' Memorandum In Opposition To Mark Cannon's Motion To Dismiss The Third Amended Class Action Complaint, (5) Plaintiffs' Memorandum In Opposition To Jimmy Addison's Motion To Dismiss The Third Amended Class Action Complaint, and (6) Plaintiffs' Opposition to the Motion to Dismiss filed by Defendants Santee Cooper, Marion Cherry, Michael Crosby, and Lonnie Carter.

would undermine the false schedule and cost projections the RICO Defendants publicly advanced.[5] It specifies material misrepresentations by individual RICO Defendants, and alleges that RICO Defendants are jointly and severally liable for material misrepresentations, omissions, and fraudulent conduct committed in furtherance of the RICO Enterprise. *Id.* at ¶ 52. The vast majority of these individual representations are also specifically cited to in public documents, with hyperlinks to those documents provided. In short, per *Harrison*, Micali is on notice of facts establishing a fraudulent scheme in which he is alleged to have taken part, and the density of cited facts pled in the Complaint should satisfy the Court that Plaintiffs have sufficient evidence of these facts.

Moreover, Rule 9(b) is also satisfied when the fraudulent misrepresentations are contained in specifically identified documents that are alleged to reflect the collective contributions of defendant corporate officers and directors. *Somerville v. Major Expl., Inc.*, 576 F. Supp. 902, 911 (S.D.N.Y. 1983). Here, Plaintiffs have pled numerous such misrepresentations and omissions in documents alleged to be attributable to the RICO Defendants, and have cited to the documents within the body of the Complaint. *See, e.g.*, Amend. Compl. ¶¶ 68, 70, 71. It would be inappropriate at this stage—perhaps nonsensical—to require Plaintiffs to attribute each statement to each individual defendant. The District Court, in *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478 (S.D.N.Y. 2011), artfully explained the rationale behind this principle:

> At first glance it would appear that the Plaintiffs have improperly "lumped" Aaron, Castranova and the DPM entities together and have not sufficiently broken out the individual statements attributable to each. But that would be a nonsensical and impossible enterprise in this case. First, the Amended Complaint alleges that Aaron and Castranova were acting on behalf of DPM. Therefore, it makes no sense to try to break out individual actions and statements insofar as DPM is concerned. More

---

[5] Amend. Compl. ¶¶ 85, 98–101, 115, 120–124, 126, 128, 130–132, 135, 136, 140–142, 145, 153, 155, 163–168, 177, 184–187, 188–191, 202, 209, 210, 212–214, 219–222, 223–228, 231, 255, 262.

> importantly, the nature of the statements makes it impossible, and unnecessary, to attribute any particular statement to a particular defendant. All of the alleged misstatements are in documents intended for public consumption. The Plaintiffs allege that the Defendants participated in the drafting and preparation of these documents. The documents were allegedly a collective enterprise. None of those documents specifically identify an individual as making any particular statement. <u>Given those circumstances, the Defendants' insistence on individual attribution would result in an inability ever to plead fraud when the preparation of the challenged document is a collective enterprise. If breaking out individual contributions to such a document is required, surely discovery would be necessary before that goal could be met.</u>

*Id.,* 826 F. Supp. 2d at 529 (emphasis added).

The fact that the Complaint alleges facts against the RICO Defendants as a group is in no way fatal. As the District Court explained in *Harris v. Wells*, 757 F. Supp. 171 (D. Conn. 1991), where fraud allegations in a complaint provide significant detail as to the circumstances of the alleged fraud such that defendants have a reasonable opportunity to answer, it does not matter that a RICO complaint lodges allegations against a group of Defendants:

> In support of their motion to dismiss, defendants Peden and Meister assert first that the eleventh count lumps all the AroChem directors together and, in doing so fails to give each defendant fair notice of the nature and factual basis of the charges against him as required by Fed. R. Civ. P. 9(b). This assertion, however, is contradicted by the detailed allegations contained in the amended complaint. Generally, a complaint need only apprise a defendant of the "general time period" of any alleged misstatements to meet the requirements of Rule 9(b). Indeed, dates, times and places need not be pleaded with absolute precision, so long as the allegations sufficiently put the defendant on notice as to the circumstances of the charged misrepresentations. <u>The fraud allegations contained in the amended complaint provide an abundance of particularized factual details including dates, times, places and names. These allegations are clearly specific enough to permit Peden and Meister a "reasonable opportunity" to answer.</u>

*Id.,* 757 F. Supp. at 173–74 (emphasis added) (citations omitted).

Group pleading is also not fatal to a complaint where a plaintiff alleges that a group of defendants was aware of wrongdoing, was under a legal obligation to take action, and failed to do

so. *See Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *10 (S.D.N.Y. Jan. 28, 2019). Here, Plaintiffs allege that the RICO Defendants knew of the intentional misrepresentations and omissions made in furtherance of the Enterprise, and possessed knowledge of assessments indicating the Project would take far longer and cost far more than the RICO Defendants had represented publicly, but failed to take action to reveal the existence of these assessments or correct the previous misstatements and omissions of the RICO Defendants that were made on behalf of the Enterprise. *See, e.g.*, Amend. Compl. ¶¶ 85, 103, 121, 122, 124, 128, 135, 142, 155, 163, 166, 177, 187, 190, 197–199, 204, 214, 245, 262, 295. As with the other RICO predicate acts, this wrongful, deliberate concealment of material facts by the RICO Defendants caused the SCPSC to approve applications for increased rates, which in turn caused Plaintiffs to pay fraudulently inflated charges. *See id.* at ¶¶ 280–281, 289–290, 306.

Plaintiffs also allege that the RICO Defendants—including Micali—furthered the RICO Enterprise through predicate acts of mail and wire fraud by receiving payments and sending bills that did not necessarily contain false statements, although they reflected charges that had been inflated through means of fraud. If the complaint does not rely upon misrepresentations in mailings or wire communications, "Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Sanchez v. ASA Coll., Inc.*, 2015 U.S. Dist. LEXIS 73222, at *16 (quoting *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998)). Moreover, "[t]he offense of a scheme to defraud focuses on the intended end result, not on whether a false representation was necessary to effect the result. Schemes to defraud, therefore, may come within the scope of the [wire and mail fraud] statute[s] even absent an affirmative misrepresentation." *United States v.*

*Cronic*, 900 F.2d 1511, 1513–14 (10th Cir.1990), *overruled on other grounds by United States v. Iverson*, 818 F.3d 1015 (10th Cir. 2016).

Plaintiffs have documented Defendants' fraudulent scheme in great detail throughout their 88-page Complaint. It is difficult to imagine a complaint that more thoroughly places defendants on notice of the overall fraudulent scheme alleged in a manner that enables them to answer the charges against them.

Plaintiffs have also alleged facts that make out a prima facie violation of the Travel Act, 18 U.S.C. § 1952: on numerous occasions, the RICO Defendants "use[d] the mail or any facility in interstate or foreign commerce, with intent to—(a) distribute the proceeds of any unlawful activity . . . or (c) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C.A. § 1952 (West 2019). The "unlawful activity" complained of is extortion (Amend. Compl. ¶ 284) and money laundering under 18 U.S.C. § 1956(a)(2). *See, e.g.*, Amend. Compl. ¶¶ 33 n.3, 278–282.[6] Moreover, Plaintiffs have specifically alleged additional predicate acts of obstruction of justice (¶¶ 301–306), extortion (¶ 284), and bank fraud (¶ 309(c)) against the RICO Defendants. All of these predicate acts are based on the same detailed factual allegations described above—and also need not meet heightened pleading standards of Rule 9(b). *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014).

---

[6] The statute prescribes criminal penalties for, among other things, "(2) [w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—(A) with the intent to promote the carrying on of specified unlawful activity." Here, the specified unlawful activity is mail and wire fraud, obstruction of justice, and violations of the Travel Act. *See* 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1).

The authorities on which Micali relies to attack the sufficiency of Plaintiffs' pleading under Rule 9(b) are either distinguishable or helpful to Plaintiffs. In *Gibson v. Confie Ins. Grp. Holdings*, 2017 WL 2936219 (D.S.C. July 10, 2017), cited on page 4 of Micali's brief, the plaintiffs' claim was dismissed because the plaintiffs offered no details whatsoever as to the content and circumstances of the alleged misrepresentations. Here, Plaintiffs have pled the content and circumstances of the RICO Defendants' misrepresentations and omissions in significant detail. *See generally* Amend. Compl. ¶¶ 66–254. Further, in *Menasco, Inc. v. Wasserman*, 886 F.2d 681 (1989), cited on page 4 of Micali's brief, the court granted defendant's motion to dismiss because plaintiffs failed to satisfy the continuity prong of RICO, in that plaintiff merely supplied "conclusory allegations of fraud" and "fail[ed] to supply *any* details regarding the operation of the dummy corporations or the identity or activity of the other persons purportedly defrauded by the defendant." *Id.* at 684. Here, Plaintiffs have alleged in detail the operation of the RICO Enterprise and fraudulent scheme and identified the victims of the scheme: South Carolina ratepayers.

In addition, *Dealers Supply Co., Inc. v. Cheil Industries, Inc.*, 348 F. Supp. 2d 579 (2004), cited on page 5 of Micali's brief, is also inapposite because it is not a RICO case. The court dismissed the plaintiff's complaint for not alleging acts of negligent misrepresentation with particularity, and for failing to distinguish between the acts of the two defendants in its pleading. Here, as detailed above, Plaintiffs have pled material misrepresentations and omissions with particularity, including copious citations to the documents in which the false statements were made, and have either attributed statements to individual defendants (for which the RICO enterprise is liable) or pled that the statements were part of documents that represented the collective effort of a group. This is more than sufficient to satisfy Rule 9(b), which, as explained, need not even be satisfied for Plaintiffs' claims to proceed.

Finally, as explained in *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999), and as discussed above, the heart of the inquiry is "(1) . . . the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts." *Id.*, 176 F.3d at 785. In pleading the content and circumstances of dozens of misrepresentations and omissions by the RICO Defendants, many of which are accompanied by citations to the documents containing those representations, Plaintiffs satisfy that standard here.

Ultimately, "[t]he real problem with Defendants' arguments is that they are just that—arguments where the Defendants ask the Court to draw inferences favorable to themselves from the allegations of the Complaint. Needless to say, the law is exactly the opposite." *Gintowt v. TL Ventures*, 239 F. Supp. 2d 580, 584 (E.D. Pa. 2002). The authority on which Micali chiefly relies to attack the viability of Plaintiffs' pleading—*Dealers Supply Co.*—is not even a RICO case and bears no factual similarity to the matter before the Court. Plaintiffs have "provide[d] enough factual content so that [the court] can draw a reasonable inference that it is plausible that [defendant] was part of an enterprise and thus liable for the misconduct alleged under RICO." *In re Le-Nature's Inc.*, No. 2:09-MC-00162, 2009 WL 3571331, at *14 (W.D. Pa. Sept. 16, 2009).

## II.   THE THIRD AMENDED COMPLAINT DOES NOT—AND NEED NOT—ALLEGE THAT MICALI COMMITTED SECURITIES FRAUD.

Micali argues at length that he cannot be held liable for the sale of stock shortly following the release of the Bechtel Report because securities fraud is not a viable predicate act under RICO. This misconstrues the Complaint. Plaintiffs do not assert Micali is liable under RICO on the basis of the stock sale. Rather, Plaintiffs assert he is liable as a participant in the Enterprise, as discussed above. What the stock sale discloses is Micali's knowledge of the Enterprise, as it gives rise to the inference that the stock sale occurred in response to Micali's knowledge of the Bechtel Report.

Plaintiffs plead that all RICO Defendants—including Micali—did, in fact, have knowledge of the Report, and conspired to keep it from being disclosed to the public. Amend. Compl. ¶¶ 155, 163–168, 177, 184–187, 196–197, 219–220. And "[k]nowledge concerning a company's key businesses or transactions may be attributable to the company, its officers and directors." *McHale v. NuEnergy Grp.*, No. CIV.A. 01-4111, 2002 WL 321797, at *4 (E.D. Pa. Feb. 27, 2002) (citing *Spitzer v. Adelhak,* No. CIV.A. 98-6476, 1999 WL 1204352, at *2 (E.D.Pa.1999)). As a board member throughout the 9-year timeframe of the massive reactor Project—likely SCANA's most significant undertaking during that period—Micali is chargeable with knowledge of the Project and the material misstatements and omissions that enabled its commencement and continuation.

RICO claims, like the ones alleged here, are not barred if the fraudulent scheme at issue only incidentally involved the underlying securities or securities transactions. *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783 (6th Cir. 2012); *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866 (9th Cir. 2010); *Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1321–23 (M.D. Fla. 2017); *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1116 (N.D. Ill. 2016).

Finally, Plaintiffs incorporate by reference herein the arguments advanced in other Plaintiffs' Memoranda in Opposition to Defendants' Motions to Dismiss that are being filed contemporaneously with this response. *See supra*, n.4. Given the robust nature of the underlying cause of action as pled, Micali's attack on the viability of the RICO conspiracy claim necessarily fails. There are more than enough predicate acts, pled with particularity, to sustain a RICO conspiracy claim, and Micali nowhere attacks the pleading of the RICO conspiracy claim itself.

## **CONCLUSION**

For the foregoing reasons, and based on the files, records, pleadings, and arguments of counsel in this action, Plaintiffs respectfully request that Defendant James Micali's Motion to Dismiss the Third Amended Complaint be denied.

Respectfully Submitted this 27th Day of September, 2019.

Strom Law Firm LLC

s/Mario A. Pacella
J. Preston Strom, Jr. (Fed. I.D. #4354)
petestrom@stromlaw.com
Mario A. Pacella (Fed. I.D. #7538)
mpacella@stromlaw.com
John R. Alphin (Fed I.D. # 9923)
jalphin@stromlaw.com
Bakari T. Sellers (Fed. I.D. #11099)
bsellers@stromlaw.com
Jessica L. Fickling (Fed. I.D. #11403)
jfickling@stromlaw.com
2110 Beltline Blvd.
Columbia, South Carolina 29204
Tel. No.:(803) 252-4800
Fax No.: (803) 252-4801

Richardson, Patrick, Westbrook & Brickman, L.L.C.
Terry Richardson (Fed. I.D. #3457)
Daniel S. Haltiwanger (Fed. I.D. # 7544)
dhaltiwangerrpwb.com
Jerry Evans (SC Bar #11658)
jevans@rpwb.com
P. O. Box 1368
1730 Jackson Street
Barnwell, SC 29812
Tel. No.: (803) 541-7850
Fax No.: (803) 541-9625

Speights & Solomons, LLC
Daniel A. Speights
dspeights@speightsandsolomons.com
A. Gibson Solomons, III

gsolomons@speightsandsolomons.com
100 Oak Street, East
Post Office Box 685
Hampton, South Carolina 29924
Tel. No.: (803) 943-4444
Fax No.: (803)943-4599

McCallion & Associates LLP
Kenneth F. McCallion (pro hac vice)
kfm@mcccallionlaw.com
100 Park Avenue – 16th floor
New York, New York 10017
(646) 366-0884

Holman Law, P.C.
Thomas A. Holman (pro hac vice)(N.Y. Reg. #1536754)
taholman@holmanlawoffice.com
99 Park Avenue, Suite 2600
New York, New York 10016
Tel. No.: (212) 481-1336
Fax No.: (866) 204-1020

Janet, Janet & Suggs
Kenneth M. Suggs, (Fed I.D. No. 3422)
ksuggs@myadvocates.com
Gerald D. Jowers, Jr. (Fed I.D. No. 8025)
gjowers@myadvocates.com
Janet, Janet & Suggs, LLC
500 Taylor St.
Columbia, SC 29201
Telephone: (803) 726-0050

Patrick A. Thronson (pro hac vice)
pthronson@JJSjustice.com
4 Reservoir Circle, Suite 200
Baltimore, MD 21208
Telephone: (410) 653-3200

The Law Offices of Jason E. Taylor, P.C.
Brian C. Gambrell (FED ID NO. 7632)
bgambrell@jasonetaylor.com
Office Address:
810 Dutch Square Blvd, Suite 112
Columbia, SC 29210
Mailing Address:
P.O. Box 2688

Hickory, NC 28603
Telephone: (800) 351-3008
Facsimile: (828) 327-9008