**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| TIMOTHY GLIBOWSKI, CHRISTINE DELMATER, STEPHANIE SPEICHER, JEFF SHELTON, DAVID DRAKE, CAROL S. ADAMS, AND TRAVIS HAMITER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCANA CORPORATION, SOUTH CAROLINA ELECTRIC & GAS COMPANY, SCANA SERVICES, INC., SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, KEVIN MARSH, JIMMY ADDISON, STEPHEN BYRNE, MARTIN PHALEN, MARK CANNON, RUSSELL HARRIS, RONALD T. LINDSAY, JAMES MICALI, MARION CHERRY, MICHAEL CROSBY, and LONNIE CARTER,<br><br>Defendants. | Case No. 9:18-273-TLW |

**DEFENDANT JIMMY ADDISON'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
<u>CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.    Addison Clearly Has Standing to Seek Dismissal of All Counts Asserted Against Him by All Plaintiffs. ............................................................................................ 3

    II.    Plaintiffs' Attempt to Justify Their Collectivized Group-Pleading Fails. .......................... 4

    III.    The Addison-Specific Allegations Are Insufficient to Establish Addison's Liability Under the Standards Articulated by Plaintiffs. ..................................................... 7

    IV.    Plaintiffs Cannot Explain Away the Absence of Any Relevant *Facts* Demonstrating Addison's Knowledge or Fraudulent Intent. ............................................ 10

    V.    Plaintiffs' Contention That Addison Participated in the Operation or Management of the RICO Enterprise Is Not Supported by the Allegations They Cite. ............................................................................................................................ 11

    VI.    Plaintiffs Cannot Point to Any Allegations Indicating That the Defendants Agreed to a RICO Conspiracy. ........................................................................................... 13

CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adler v. Berg Harmon Assocs.*,
    790 F. Supp. 1222 (S.D.N.Y. 1992) ................................................................................... 13

*Bartley v. Wells Fargo Bank, NA*,
    No. 3:14-cv-3814, 2015 WL 5158708 (D.S.C. Sept. 2, 2015) ........................................ 1, 2

*Bitton v. Gencor Nutrientes, Inc.*,
    654 F. App'x 358 (9th Cir. 2016) ...................................................................................... 10

*Comcast of South Florida II, Inc. v. Best Cable Supply, Inc.*,
    No. 07-cv-22335, 2008 WL 190584 (S.D. Fla. Jan. 22, 2008) .................................... 11, 12

*Field v. GMAC LLC*,
    660 F. Supp. 2d 679 (E.D. Va. 2008) ................................................................................ 14

*Haley v. Corcoran*,
    659 F. Supp. 2d 714 (D. Md. 2009) .................................................................................... 7

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ........................................................................................... 7, 9

*In re Crude Oil Commodity Litigation*,
    No. 06-cv-6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) .......................................... 4

*In re Platinum-Beechwood Litig.*,
    No. 18-cv-12018, 2019 WL 4934967 (S.D.N.Y. Oct. 7, 2019) ......................................... 15

*In re Refco Inc. Sec. Litig.*,
    826 F. Supp. 2d 478 (S.D.N.Y. 2011) ...................................................................... 4, 5, 14

*Juntti v. Prudential–Bache Securities, Inc.*,
    993 F.2d 228 (4th Cir. 1993) ........................................................................................... 1, 5

*Manji v. New York Life Ins. Co.*,
    945 F. Supp. 919 (D.S.C. 1996) .......................................................................................... 3

*Mega Concrete, Inc. v. Smith*,
    No. 09-cv-4234, 2011 WL 1103831 (E.D. Pa. Mar. 24, 2011) ......................................... 11

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ................................................................................................ 4

*Min Sook Shin v. Umeken, U.S.A., Inc.*,
    No. 17-cv-00315, 2017 WL 6884311 (C.D. Cal. Aug. 15, 2017) ....................................... 5

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
   165 F. Supp. 2d 514 (S.D.N.Y. 2001) .................................................................................14, 15

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
   85 F. Supp. 2d 282 (S.D.N.Y. 2000) ...........................................................................................14

*Orlowski v. Bates*,
   No. 2:11-cv-01396, 2015 WL 1485980 (W.D. Tenn. Mar. 31, 2015) ..................................8, 10

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017) ..........................................................................................4

*Rafter v. Bank of America*,
   2009 WL 691929 (S.D.N.Y.) .......................................................................................................4

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ...................................................................................................................11

*Sloan v. Winn Dixie Raleigh, Inc.*,
   25 F. App'x 197 (4th Cir. 2002) ...................................................................................................3

*Thomas v. Ross & Hardies*,
   9 F. Supp. 2d 547 (D. Md. 1998) ...............................................................................................11

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) .......................................................................................................7

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ...................................................................................................11

*Wenham v. Owings*,
   No. 6:06-cv-3312, 2009 WL 10678238 (D.S.C. Jan. 26, 2009) ..................................................5

**STATUTES**

18 U.S.C. § 1962 ............................................................................................................... *passim*

# INTRODUCTION[1]

Plaintiffs' Opposition to Defendant Jimmy Addison's ("Addison") Motion to Dismiss ("Opposition")—like their Third Amended Complaint—hardly addresses Addison and his supposed role in the alleged RICO scheme. Instead, Plaintiffs focus most of their Opposition on attempting to justify their collectivized group-pleading and futilely arguing that they are only required to provide "some detail" as to Addison, rather than describe with particularity all of the fraudulent activities in which he is alleged to have engaged. But the law is clear: where fraud is alleged, "Plaintiffs are forbidden from grouping defendants together without specifying which defendant committed which wrong and are required instead to set forth with particularity each defendant's culpable conduct." *Bartley v. Wells Fargo Bank, NA*, No. 3:14-cv-3814, 2015 WL 5158708, at *10 (D.S.C. Sept. 2, 2015) (citing *Juntti v. Prudential–Bache Securities, Inc.*, 993 F.2d 228 (4th Cir. 1993)). Plaintiffs' repeated efforts to circumvent this edict fail.

As to Addison's allegedly "culpable conduct," the Opposition only underscores the paucity of relevant allegations concerning Addison's conduct and the utter lack of detail surrounding them. In arguing that they "plainly describe Defendant Addison's role in the conspiracy" in the Third Amended Complaint, Plaintiffs catalog *the entirety* of their allegations directed at Addison:

- "According to the sworn testimony of Carlette Walker in 2018, Defendants Marsh, Byrne, and Addison pressured her to lie in her 2015 written and sworn testimony before the PSC";

- "Further, Walker testified that Marsh, and Addison 'knowingly lied to the public about that fixed-price contract and lied about being able to complete that project on time'";

- "Additionally, Addison was actively involved in suppressing Defendants' retention of Bechtel to complete an audit in 2015"; and

---

[1] Addison again joins the relevant briefing filed by Defendants SCANA Corporation ("SCANA"), SCANA Services, Inc., and South Carolina Electric & Gas Company ("SCE&G") ("SCANA's Reply") in its entirety. Addison submits this supplemental brief to address the specific points raised by Plaintiffs in their Opposition directed at him (Dkt. 141).

1

- "Defendant Addison nevertheless received a bonus of $620,000 in 2016 for his work on the Project."

Dkt. 141 at 6-7; *see also id.* at 12 (contending that the Complaint sets forth "detailed factual allegations" of Addison's role in the alleged fraudulent scheme by alleging that "in 2015, Defendant Addison actively encourage Carlette Walker to lie," "suppressed the Bechtel audit," and "received a bonus in 2016 in the amount of $620,000 associated with the Project"). Two of these allegations—that Addison pressured Carlette Walker to lie and himself knowingly lied about the Project—are vague, conclusory allegations of fraud that fail to apprise Addison of the content or context of any alleged misrepresentation. The remaining allegations—that Addison did not disclose the mere retention of a consultant and received a bonus (for his efforts to secure additional financing for the Project)—simply do not support a claim for fraud or evince any fraudulent intent. *See* Dkt. 114-1 at 12-14.

Plaintiffs' failure to describe Addison's supposed culpable conduct with any modicum of particularity is especially egregious in this case given Plaintiffs' theory of liability. Plaintiffs contend that as Chief Financial Officer of SCANA, Addison engaged in a fraudulent scheme that ultimately resulted in customers of an entirely separate company, Santee Cooper, paying inflated bills for their electricity services. While it is difficult to comprehend a cogent theory as to how Addison participated in any conduct that proximately led Santee Cooper customers to pay allegedly inflated rates, Plaintiffs' vague and collectivized pleading makes it impossible to trace Plaintiffs' alleged injuries back to any conduct by Addison.

Finally, and in large part due to their insistence on group-pleading, Plaintiffs have failed to adequately plead essential elements of their claims: knowledge, intent, participation in the operation or management of the RICO enterprise's affairs, and agreement to participate in a RICO conspiracy. Nothing Plaintiffs argue in their Opposition overcomes the shortcomings in their

2

Complaint.

## ARGUMENT

### I. Addison Clearly Has Standing to Seek Dismissal of All Counts Asserted Against Him by All Plaintiffs.

As an initial matter, Plaintiffs incomprehensibly claim that Addison "does not have standing to seek dismissal of the complaint in its entirety" because only Plaintiff Hamiter is asserting claims against him in the Third Amended Complaint. Dkt. 141 at 1 n.1. To be clear, Addison is moving to dismiss the Third Amended Complaint in its entirety ***as to himself*** because none of the seven Plaintiffs named in the Complaint can state a claim upon which relief can be granted against him. Plaintiffs Glibowski, Delmater, Speicher, Shelton, Drake, and Adams—all SCE&G customers—cannot state a claim against Addison because they have released any such claims.[2] As a result, their claims are barred by the doctrine of *res judicata*, and Addison has standing to dismiss those claims on that ground. *See, e.g.*, *Sloan v. Winn Dixie Raleigh, Inc.*, 25 F. App'x 197, 199 (4th Cir. 2002) ("Because appellants did not opt out [of a prior class action] and because their claims are barred by *res judicata*, the district court did not err in dismissing the claims in their entirety."); *Manji v. New York Life Ins. Co.*, 945 F. Supp. 919, 924 (D.S.C. 1996) (granting summary judgment for defendant because final judgment in state class action "must be accorded full faith and credit, and . . . the final judgment is *res judicata* as to this action"). Meanwhile, Plaintiff Hamiter—a Santee Cooper customer—cannot state a claim for all of the reasons explained below and in Addison's Motion to Dismiss. Accordingly, as Addison initially requested, "the Court should dismiss Plaintiffs' Third Amended Complaint in its entirety ***as to Addison*** with

---

[2] To the extent these Plaintiffs are not asserting any claims against Addison in the first place, their presence in the Complaint does not negate Addison's standing to seek dismissal of the Third Amended Complaint in its entirety as to himself.

3

prejudice." Dkt. 114-1 at 5 (emphasis added).

## II.     Plaintiffs' Attempt to Justify Their Collectivized Group-Pleading Fails.

Relying heavily on *In re Refco Inc. Securities Litigation*, 826 F. Supp. 2d 478 (S.D.N.Y. 2011), Plaintiffs contend that "[t]he fact that the Complaint alleges facts against the RICO Defendants as a group is in no way fatal" to their Complaint and that the group-pled allegations should simply be read as applying to Addison. Dkt. 141 at 8; *id.* at 5-6 (arguing that Addison "is one of the RICO Defendants identified in the Third Amended Complaint" and the Complaint "contains a host of allegations that 'the RICO Defendants' made numerous material misrepresentations and omissions through the use of the interstate mails and wires"). But even *Refco* makes clear that:

> [W]hen a fraud claim is made against multiple defendants, . . . a plaintiff is obligated to state, with particularity, the acts [and] omissions complained of by *each defendant*. ***General allegations made against multiple defendants do not satisfy the pleading requirements of [Rule] 9(b)***.

*In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d at 529 (quoting *Rafter v. Bank of Am.*, No. 4-cv-3341, 2009 WL 691929, at *12 (S.D.N.Y. Mar. 12, 2009) (emphases added) (internal quotations omitted).[3]

The court went on to note, however, that under the specific facts of that case, it would be impossible to attribute any particular misstatement to a particular defendant because ***all*** of the statements at issue were contained in documents that ***all*** defendants had collectively participated in drafting and preparing. *Id.* at 529; *see also PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 496

---

[3] The *Refco* court further explained that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants,'" and "[i]n situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement." *Id.* (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) and quoting *In re Crude Oil Commodity Litig.*, No. 06-cv-6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007)).

4

(S.D.N.Y. 2017) (declining to follow *Refco* because the complaint at issue did not allege that the individual defendant had participated in the preparation of any relevant collective statement). Here, there are no allegations in the Third Amended Complaint that Addison participated in drafting or preparing any statement generally attributed to all "RICO Defendants."[4] In fact, there are no allegations that Addison was even aware of these statements.

Moreover, while certain courts have permitted "a plaintiff to presume, for the purpose of pleadings, that statements such as those made in prospectuses, press releases or other group-published information are the collective actions of the officers or directors of a corporation," "courts in the Fourth Circuit have rejected application of the group pleading doctrine." *Wenham v. Owings*, No. 6:06-cv-3312, 2009 WL 10678238, at *4 (D.S.C. Jan. 26, 2009) (rejecting doctrine in context of securities fraud case). Therefore, absent a plausible allegation that Addison was actually involved in drafting or preparing the false statements in a multi-author or authorless document, Plaintiffs cannot blindly attribute those statements to Addison.

Further, contrary to Plaintiffs' suggestion, Addison's name cannot simply be substituted in the Complaint anywhere the term "RICO Defendants" appears. As explained by the Fourth Circuit, "the burden rests on plaintiffs to 'enable a particular defendant to determine with what it is charged.'" *Juntti*, 993 F.2d 228. "[M]ost, if not all, of the allegations in [the Complaint] could apply to some or all of the defendants. Moreover, it might be that with a given allegation plaintiffs

---

[4] In their Opposition, Plaintiffs claim that "many" misrepresentations were made through documents "collectively created by all Defendants" which are cited in the Complaint, with hyperlinks provided. Dkt. 141 at 6. Plaintiffs do not make any such allegation in their Complaint, and there is no indication from the documents themselves that Addison was involved in their creation. Nor can Plaintiffs simply rely on Addison's role as a corporate officer in attributing all SCANA-related statements to him. *Min Sook Shin v. Umeken, U.S.A., Inc.*, No. 17-cv-00315, 2017 WL 6884311, at *5 (C.D. Cal. Aug. 15, 2017) (explaining that "Plaintiff must allege with particularity [the individual defendant's] connection to the alleged fraudulent statements and not simply his general role in [the company's] affairs").

5

meant to charge only some defendants but that all defendants would have considered themselves so charged. The particularity requirement of Rule 9(b) is designed to avoid just such confusion." *Id.*

Some references to "RICO Defendants" in the Third Amended Complaint do not (or could not) pertain to Addison. For example, paragraph 122 describes an email between Kevin Marsh, the CEO of Chicago Bridge & Iron, and the CEO of Westinghouse, and then states that the "RICO Defendants" did not disclose the email. Reading that allegation to mean Addison did not disclose an email he did not send or receive, and of which he is not otherwise alleged to be aware, would be nonsensical. Paragraph 131 likewise references a letter from Ron Jones at SCANA to a Westinghouse employee that the "RICO Defendants" withheld, but there is nothing indicating Addison received, read, or was even aware of the letter. The Complaint is replete with other examples of similar references, such that "Addison" simply cannot be viewed as synonymous with "RICO Defendants." Allowing Plaintiffs to proceed with allegations that may or may not refer to Addison would engender the very confusion Rule 9(b) was meant to prevent.

Plaintiffs make one last effort to pin all of their allegations against "RICO Defendants" on Addison, claiming that the RICO Defendants like Addison are all jointly and severally liable for each other's material misrepresentations, omissions, and fraudulent conduct committed in furtherance of the RICO enterprise. Dkt. 141 at 6. For support, Plaintiffs cite to a bare legal conclusion in their Third Amended Complaint, rather than any case law. Just as critical, Plaintiffs do not cite any facts that would establish joint and several liability. But recitations of legal conclusions are not enough to state a valid claim, particularly without facts to support Plaintiffs' contention that Addison is liable for the actions and statements of others. For example, to the extent Plaintiffs are claiming that Addison is liable for the conduct of those acting on his behalf,

6

they "must allege the factual predicate for the agency relationship with particularity." *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (citation omitted). Plaintiffs have not done so here. Given: (1) the clear law barring collectivized group-pleading; (2) Plaintiffs' failure to justify departure from that law; and (3) that there has been no indication from Plaintiffs that they can properly state claims against Addison without engaging in such group-pleading, Plaintiffs' Third Amended Complaint should be dismissed in its entirety with prejudice.

### III. The Addison-Specific Allegations Are Insufficient to Establish Addison's Liability Under the Standards Articulated by Plaintiffs.

In the absence of the collective, group-pled allegations, Plaintiffs are left with essentially four allegations aimed at Addison: (1) he pressured Carlette Walker to lie at some point in 2015; (2) he "knowingly lied to the public about the fixed-price contract and lied about being able to complete that project on time"; (3) he was opposed to the disclosure of the retention of Bechtel in 2015 (at the time Bechtel was first engaged, but before they completed any assessment); and (4) he received a bonus of $620,000 in 2016. Dkt. 141 at 6-7. Plaintiffs contend these specific allegations—and no others—put Addison "on notice of facts establishing a fraudulent scheme in which he is alleged to have taken part." *Id.* at 6; *see also id.* at 12 (claiming that these "detailed factual allegations" set forth the "who, what, when, where, and how" of Addison's role).

But the first two allegations are merely nebulous assertions that Addison somehow committed fraud, or encouraged another individual to commit fraud. As Plaintiffs readily concede in their Opposition, to sufficiently plead fraud for purposes of a motion to dismiss, a plaintiff must provide a defendant "with notice of the time, place, and general content of the false representations along with the person or entity making them, and what the person gained from them." *Id.* at 3 (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999)). And, in addition, to the "when," "where," "what," "who," and "why," of fraud, Plaintiffs must

7

explain *how* the alleged fraud was committed. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).  Moreover, while Rule 9(b) requires **detailed** factual allegations, courts are careful not to confuse verbosity with detail.[5]  *See, e.g.*, *Orlowski v. Bates*, No. 2:11-cv-01396, 2015 WL 1485980, at *11 (W.D. Tenn. Mar. 31, 2015) (finding dense paragraph of RICO allegations against individual defendant did not satisfy Rule 9(b) where "[e]ach allegation is stated only in general terms and fails to describe any particular action allegedly taken").

With respect to Plaintiffs' allegation that Addison "pressured [Carlette Walker] to lie in her 2015 written and sworn testimony before the PSC" (Dkt. 141 at 6), Plaintiffs fail to explain the "what" and "how" of the alleged fraud.  Plaintiffs never even try to defend the sufficiency of these allegations in their Opposition, other than to state, matter-of-factly, that the Complaint contains the "who, what, when, where, and how of Defendants' scheme and Addison's role in it." *Id.* at 12.  At best, however, Plaintiffs have merely pled that Walker disagreed with others over the multi-year projection of the costs required to finish the Project.[6]

Plaintiffs' allegation that Addison "knowingly lied to the public about the fixed-price contract and lied about being able to complete that project on time" fares even worse.  Dkt. 141 at 7.  As a threshold matter, Plaintiffs' allegation is not even a firsthand account of Addison's conduct.  Rather, Plaintiffs repeat, with no further context or explanation, Carlette Walker's *ipse*

---

[5] To be clear, notwithstanding the length of the Third Amended Complaint, the allegations against Addison are neither verbose nor detailed.

[6] Plaintiffs claim that "Defendant Addison does not deny the allegations against him with respect to Carlette Walker's testimony before the SCPSC.  Rather, Defendant Addison recasts his communications with Ms. Walker as innocuous, describing Defendant Addison's directives to Ms. Walker as nothing more than a disagreement about future projections." Dkt. 141 at 14.  Addison, as he must at this pleading stage, accepts the allegations of the Complaint.  And Addison is not "recasting" his communications with Ms. Walker.  Indeed, the Third Amended Complaint plainly states that "Walker calculated the remaining project cost was over $1 billion," but Westinghouse "had given" Kevin Marsh a lower "price tag to finish the project." Dkt. 103 at ¶ 151.  As such, Plaintiffs' own allegations describe a "disagreement about future projections."

8

*dixit* assertion that Addison "knowingly lied." Further, Plaintiffs do not explain what, specifically, Addison lied about; nor do they allege what form his "lie" took, when he lied, or how his characterization of the timing of the Project's completion was a misrepresentation as opposed to, for example, an inaccurate future projection. Even under the case law Plaintiffs cite in their Opposition, these allegations are markedly insufficient. *See, e.g.*, *Harrison*, 176 F.3d at 783-84.

Plaintiffs are left, then, with the rather mundane allegations that Addison: (1) was copied on or referenced in emails discussing whether SCANA should disclose the decision to engage Bechtel *before* Bechtel had completed its work; and (2) "received a bonus of $620,000 in 2016 in part for efforts to secure financing relating to the Nuclear Reaction Project." Dkt. 103 at ¶¶ 25, 165, 166, 239(b). Plaintiffs attempt to bolster these allegations in their Opposition, first colorfully claiming that Addison "actively suppressed the Bechtel audit from regulators, the financial community, and the public at a time where it was evident that the Project was off schedule and costs had skyrocketed." Dkt. 141 at 12. But the facts Plaintiffs actually allege do not demonstrate "active suppression" by Addison, nor do they suggest any attempt to keep "the Bechtel audit" from regulators. Rather, the facts suggest that Addison was copied on (or referenced in) emails at the time when Bechtel was initially engaged on the Project, when SCANA officials were aligned on the fact that Bechtel's retention did not need to be disclosed.

Additionally, Plaintiffs claim that Addison received a $620,000 bonus "associated with the Reactor Project in 2016," which "demonstrates that he knew of, agreed to, and benefitted directly from the objectives of the RICO enterprise." Dkt. 141 at 17. But the allegations in the Complaint again fall well short of Plaintiffs' colorful characterization in their Opposition. According to the Complaint, Addison "received a bonus of $620,000 in 2016 in part for efforts to secure financing relating to the Nuclear Reactor Project." Dkt. 103 at ¶ 239(b). Securing financing for the Project

9

was a legitimate, lawful business function for Addison and in no way evidences his knowledge of—much less involvement in—any fraudulent scheme. Moreover, Addison's efforts to secure outside financing would have mitigated or reduced the need to rely on rate increases from customers to finance the Project, directly undermining Plaintiffs' contention that the bonus is itself proof of any fraudulent intent.

### IV. Plaintiffs Cannot Explain Away the Absence of Any Relevant <u>*Facts*</u> Demonstrating Addison's Knowledge or Fraudulent Intent.

As explained in Addison's Motion to Dismiss, Plaintiff must provide ***factual allegations*** giving rise to a reasonable inference of knowledge and intent. *See* Dkt. 114-1 at 18 (collecting cases); *see also, e.g.*, *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 363 (9th Cir. 2016) (affirming dismissal of RICO claim where plaintiffs failed to plead fraud with particularity, reasoning that none of plaintiffs' factual allegations suggested that the defendant had knowledge of the falsity or unreliability of the study at issue). Plaintiffs' Opposition makes clear that they are relying on a single factual averment purportedly giving rise to an inference of knowledge and intent: Addison received a bonus in 2016. Plaintiffs point to no other facts in that section of their Opposition, and the remainder of that section consists of conclusory assertions regarding the knowledge or intent of "SCANA," the "SCANA Defendants," or the "Individual SCANA Defendants." Dkt. 141 at 13-14; *see also id.* at 17 (claiming that Addison's collection of a bonus somehow "demonstrates that he knew of . . . the objectives of the RICO enterprise").

The fact that Addison received a bonus, however, does not demonstrate that Addison had the requisite knowledge of the allegedly fraudulent scheme. Nor does the fact of a bonus plausibly establish that he possessed any fraudulent intent. As noted in the Third Amended Complaint, Addison received the bonus for his efforts "to secure additional financing" for the Project. Dkt. 103 at ¶ 25. Such efforts to secure financing from outside sources are antithetical to a scheme to

10

extract inflated fees from rate-paying customers, and, in any event, raising outside capital fell squarely within Addison's legitimate job function as the Chief Financial Officer during the relevant period. As such, his bonus is in no way connected to the alleged fraudulent scheme—especially one in which the ultimate victims are customers of an entirely separate company—and does not support a plausible inference that Addison knew of any misstatements or omissions or intended to defraud any Santee Cooper customers (much less that he made any misstatements or omissions himself).

### V.     Plaintiffs' Contention That Addison Participated in the Operation or Management of the RICO Enterprise Is Not Supported by the Allegations They Cite.

According to Plaintiffs, the allegations in paragraphs 25, 150, 164, 165, 190, and 237 of their Third Amended Complaint "are sufficient to demonstrate Addison participated in the operation or management of the RICO enterprise." Dkt. 141 at 14. Not so. As the case law makes abundantly clear, to satisfy 18 U.S.C. § 1962(c), "one must have some part in **directing** [the] affairs" of the *enterprise*. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis added). Accordingly, "[m]ere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." *Thomas v. Ross & Hardies*, 9 F. Supp. 2d 547, 554 (D. Md. 1998); *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (1962(c) liability requires "an element of direction" and "simply being involved" will not suffice). Moreover, that operation or management must relate to "the affairs of the enterprise, as opposed to simply [defendant's] own ostensibly legitimate business affairs." *Mega Concrete, Inc. v. Smith*, No. 09-cv-4234, 2011 WL 1103831, at *10 (E.D. Pa. Mar. 24, 2011); *see also Comcast of S. Fla. II, Inc. v. Best Cable Supply, Inc.,* No. 07-cv-22335, 2008 WL 190584, at *8 (S.D. Fla. Jan. 22, 2008) (finding plaintiffs' allegations relating to the job titles and employment of defendants did not satisfy § 1962(c) where defendants could have "participated in the corporations in an entirely

11

innocuous way, totally unassociated with the racketeering activity alleged").

As pled, Plaintiffs' allegations do not plausibly show that Addison operated or managed the affairs of the allegedly illicit enterprise:

- **Paragraph 25.** Plaintiffs allege that Addison served as Chief Financial Officer of SCANA, conclusorily claim he breached some unidentified fiduciary duty, and state that he received a bonus for his efforts to secure additional financing for the Project. But Addison's title alone is not sufficient to show participation in the management or operation of the enterprise. *Comcast,* 2008 WL 190584, at *8. Plaintiffs' claim that Addison somehow breached a fiduciary duty is a bare legal assertion, not a factual allegation. And Addison's passive receipt of a bonus has nothing to do with managing or operating the affairs of the enterprise and is related to Addison's legitimate business function at SCANA.

- **Paragraph 150.** Plaintiffs claim that SCANA's "requests to modify the project schedule enabled SCANA to request a revised rate increase without a general rate case." This allegation is not directed at Addison and does not demonstrate that he directed the affairs of the alleged enterprise.

- **Paragraph 164.** Paragraph 164 relates to an email sent by a SCANA executive about initial thoughts regarding whether to disclose the engagement of Bechtel. The receipt of an email alone cannot constitute managing or operating the enterprise.

- **Paragraph 165.** Paragraph 165 involves additional emails that were not sent by Addison, including an email stating that Addison "didn't want to volunteer anything" about the Bechtel engagement in an SEC filing. A second-hand account of Addison's apparent belief of what should (not) be included in an SEC filing regarding the engagement of a third-party consultant is a far cry from showing that Addison was actively involved in managing an illicit enterprise.

- **Paragraph 190.** Plaintiffs claim that Santee Cooper did not publicly disclose a voicemail Carlette Walker left for Marion Cherry in which she apparently claimed without further explanation that Addison is "of the same cloth" as Kevin Marsh and other SCANA executives and they were all "on the frigging take." Nothing referenced in this paragraph constitutes a factual allegation that explains "*how* the individual Defendants played a part in directing the affairs of the enterprise"; indeed, the activity complained of here was of Santee Cooper, not even SCANA (and certainly not Addison). *Comcast,* 2008 WL 190584, at *8. Moreover, "conclusory allegations and unwarranted deductions of fact" are insufficient to show participation in the operation or management of an enterprise. *Id.*

- **Paragraph 237.** Paragraph 237 relates to "admissions of the RICO Defendants" and does not specifically identify Addison or explain his purported role in directing the enterprise's affairs.

In addition, Plaintiffs claim that their "allegations against [Addison] with respect to

12

Carlette Walker's testimony before the SCPSC" further show that he has participated in directing the operation or management of the alleged RICO enterprise. Dkt. 141 at 14. But that allegation consists entirely of repeating Walker's deposition testimony that Addison somehow "pressured her to lie in her 2015 written and sworn testimony before the PSC." Dkt. 103 at ¶ 151. The allegation is too vague to even discern whether or how it could give rise to an inference that Addison directed the affairs of the enterprise. Plaintiffs make an enormous leap in suggesting that through some unexplained interaction with Walker, Addison was managing the affairs of an entire illicit enterprise. In any event, as explained above, the Third Amended Complaint itself makes clear that what Walker calls a "lie" was a difference of opinion over what to provide as the projected "remaining project cost."

## VI.     Plaintiffs Cannot Point to Any Allegations Indicating That the Defendants Agreed to a RICO Conspiracy.

RICO conspiracy claims should be dismissed where "there are no factual allegations supporting an inference that the various defendants consciously agreed to become part of a RICO conspiracy." *Adler v. Berg Harmon Assocs.*, 790 F. Supp. 1222, 1234 (S.D.N.Y. 1992). There are no such allegations of requisite agreement in this case, and Plaintiffs' attempts to argue that they have properly alleged a RICO conspiracy all fail. *See* Dkt. 141 at 15-16.

*First*, Plaintiffs' Opposition merely describes the "objective of the Nuclear Reactor Project" and sets forth bullet points summarizing their theory of the case. *Id.* But none of the bullet points reference any factual averments that show that Addison or any other defendant consciously agreed to become part of a RICO conspiracy. The closest Plaintiffs come to alleging any sort of agreement is alleging, with no specificity, that: (1) the "RICO Defendants all participated in the Project in furtherance of the scheme"; (2) the RICO Defendants "were knowingly and intentionally promoting and conducting their operations with proceeds derived

13

from the fraudulent inflated advance finance scheme"; and (3) the "RICO Defendants used the mails and wires in knowing furtherance of the aforementioned fraudulent scheme." *Id.* Merely stating that all RICO Defendants knowingly participated in the furtherance of the scheme is a "bald assertion" that is "plainly insufficient" for purposes of establishing a RICO conspiracy claim. *See Refco*, 826 F. Supp. 2d at 539-40 (finding plaintiffs failed to satisfy even the more liberal pleading requirements of Rule 8(a) in pleading their New Jersey RICO conspiracy claim).

More to the point, Plaintiffs' Complaint lacks any *facts* that would tend to show *agreement*. Knowing participation in the scheme alone does not show conscious agreement (even if that was specifically alleged, which it is not). *See, e.g.*, *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) ("[M]ere knowledge of a scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy."); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 303 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001) (to state a claim under § 1962(d), a plaintiff must plead as to each conspirator: (1) acts in furtherance of the conspiracy; (2) knowing participation in the same; and (3) an agreement to join the conspiracy); *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008) ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." (citation omitted)).

*Second*, Plaintiffs contend that there "need not be agreement between all conspirators on each element of the entire scheme." Dkt. 141 at 16-17. But Plaintiffs here fail to point to facts showing *any agreement* by Addison (or any other defendant) to participate in any part of the scheme. Indeed, to show such agreement, a plaintiff must allege that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common

14

purpose of a RICO enterprise." *Nasik*, 165 F. Supp. 2d at 541.  Here, Plaintiffs do not identify any such words or actions.

***Third***, Plaintiffs remarkably claim that Addison's "collection of a $620,000 bonus associated with the Reactor Project in 2016 demonstrates that he knew of, ***agreed to***, and benefitted directly from the objectives of the RICO enterprise." Dkt. 141 at 17 (emphasis added).  Plaintiffs make an astronomical logical leap in concluding that, by receiving a bonus for securing additional financing for the Project, Addison agreed to the alleged RICO conspiracy.  By Plaintiffs' astounding logic, anyone who received any remuneration remotely related to the Project—contractors, consultants, or employees of SCANA or Santee Cooper—must be deemed to have agreed to the supposed conspiracy.  But, of course, the law does not go nearly that far.  "[M]ere knowledge of a scheme, ***even coupled with personal benefit***, is not enough to impose liability for a RICO conspiracy."  *In re Platinum-Beechwood Litig.*, No. 18-cv-12018, 2019 WL 4934967, at *21 (S.D.N.Y. Oct. 7, 2019) (emphasis added) (quoting *Nasik*, 165 F. Supp. 2d at 541).

Facts indicating that a party has agreed to join the alleged conspiracy are required to properly plead a § 1962(d) claim.  Plaintiffs' Third Amended Complaint does not provide any, and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Jimmy E. Addison respectfully requests that the Court dismiss Plaintiffs' Third Amended Complaint in its entirety with prejudice.

Respectfully submitted,

ROE CASSIDY COATES & PRICE, PA

s/William A. Coates
William A. Coates, Federal Bar No. 00183
Post Office Box 10529
Greenville, South Carolina 29603
864-349-2600
864-349-0303
wac@roecassidy.com

*Of Counsel:*
Meredith Jones Kingsley
Alston & Bird LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Phone: 404-881-7000
Fax: 404-253-8463
Meredith.Kingsley@alston.com

*Attorneys for Defendant Jimmy E. Addison*

October 25, 2019

16